Ridley Township, Appellant, *v.* Ridley Park Borough.

Argued March 12, 1941.

Before Keller, P. J., Cunningham, Stadtfeld, Rhodes and Hirt, JJ.

*R. Paul Lessy,* for appellant.

*Ellwood J. Turner,* for appellee.

OPINION BY RHODES, J., June 30, 1941:

The Township of Ridley petitioned the court below for a declaratory judgment of its rights, status, and legal relations under a certain agreement with the Borough of Ridley Park, on the facts averred in the petition. The Borough of Ridley Park filed an answer in which the agreement and certain other averments in the petition were admitted. After hearing, the court below rendered its decision and declared a judgment in favor of plaintiff, dividing the costs. From the final judgment entered, the township has appealed.

The Township of Ridley and the Borough of Ridley Park are municipalities in Delaware County. These proceedings concern 491 acres of the township to the north and 66 acres to the south of the borough. The involved area of the borough is 331 acres. Southward through all three areas flows Stoney Creek which empties into Darby Creek.

For some years previous to February 14, 1931, the date of the agreement between the two municipalities, the borough possessed and maintained a sewer extending from a point in what is known as the McCarthy land in the borough down the valley of Stoney Creek, across Chester Pike, the southerly boundary of the borough, through the southerly portion of the township, and emptying into Darby Creek. The sewer had been constructed in sections at various times. It was 10 inches in diameter at the point of its origin in the McCarthy property, widened to 12 inches at a lower point, and finally had a diameter of 15 inches. So maintained, it served 267 acres of the borough. Sixty-four acres of the borough lying north of the point of origin of the sewer in the McCarthy property were without service.

In 1931 the township was desirous of laying a 24-inch sewer along the valley of Stoney Creek to Darby

Creek. Rather than construct an entirely new line
parallel to the existing borough sewer, it was proposed
and agreed that the new township sewer join the exist-
ing borough sewer at the point in the McCarthy prop-
erty above which the borough then had no sewer facili-
ties. The borough expressly agreed to share with the
township its own outlet to Darby Creek, and in return
the borough was given the right to enter the section of
the new township line running across the northerly 64
acres of the borough with as many lateral sewers as it
desired, by which service was supplied this area of the
borough previously unsewered. (Fifth and sixth para-
graphs of agreement.) The cost of the sewer newly con-
structed by the township totaled $123,166.87, while the
section of it lying within the borough cost $31,559.19.

The seventh and eighth paragraphs of the agreement
between the township and the borough, being here in-
volved, are printed in the margin.[1]

---

[1] "Seventh—If at any time during the term of this agreement,
or any extension thereof, the Borough of Ridley Park shall be
obliged to replace the above mentioned twelve-inch sections of
the sewer with a 24-inch or more section of sewer, or by reason
of the erection of the proposed sewage disposal plant, should the
Borough of Ridley Park desire to replace the said 12-inch or the
said 15-inch sewer, or re-locate the same, the Township of Ridley
shall pay unto the said Borough of Ridley Park, that proportion of
the total cost of the construction of or replacement of the said
sewer that the area of Ridley Township tributary to the sewer
bears to the area of the Borough of Ridley Park tributary to the
said replaced sewer. The Borough of Ridley Park shall pay its
proportionate share in the same computation. Provided, however,
that should areas of other Boroughs, Townships or municipalities
be drained by sewers emptying into the sewer or sewers of the
Township of Ridley and thus into that of the Borough of Ridley
Park, the said areas shall enter into and be added in the com-
putation of proportions, so that the Borough of Ridley Park shall
only pay in such proportion as its area bears to the sum total of
all the area drained. Unless the parties can agree upon the num-
ber of acres, tributary, then and the same shall be referred to
the engineer, as set forth in Paragraph No. 10 hereafter, who shall

The borough alone never replaced or relocated its sewer. However, the Central Delaware County Sewer Authority, composed of the township, the borough, and several other municipalities not concerned in this controversy, in 1935 did reconstruct and in part relocate it. It appears to be conceded that this operation was a satisfaction and discharge between the township and the borough of their mutual rights and liabilities under the seventh paragraph of their agreement, because in this proceeding to determine the liability of the borough under the eighth paragraph, conditioned expressly upon the event of the reconstruction referred to in the seventh, the answer of the borough to the township's petition for a declaratory judgment admits liability although disputing the amount.

The controversy thus presented the questions: (1) How the fraction of the cost of the construction to be borne by the borough should be determined; (2) whether the borough should bear that fraction of the cost of the whole sewer constructed by the township, or of only that part lying within the borough. At the hearing before the court below there was testimony presented to the effect that, as foreseen in the seventh paragraph of the agreement, other municipalities by that time were additional users of the township sewer. The testimony of both township and borough engineers agreed that the municipalities and their respective areas so served were:

---

apportion the costs and amounts to be paid by each of the parties in the proportions as above set forth.

"Eighth—In the event that the said Borough of Ridley Park shall re-construct or re-locate the said sewer as set forth in Paragraph No. 7, then in the settlement between the said Township, and the Borough, the said Borough of Ridley Park shall pay unto the Township of Ridley, its share of the cost of the sewer which the Township is now about to construct through the said Borough, in the same proportion as it pays under Paragraph No. 7, said cost to be determined by the certification of the engineers in charge of the said construction."

Springfield Township ............... 573 acres

Morton Borough ................... 182 acres

Rutledge Borough .................. 92½ acres

Prospect Park .................... 37½ acres

885 acres

With the 557 acres of the township and the 331 acres of the borough added, the total acreage served by the combined system at the time the controversy arose appears to be 1,773 acres. The calculation made by the township in its petition for declaratory judgment, and in its requests for findings of fact and conclusions of law, varies slightly from this result, but the township contended it was entitled to recover the proportion of the total cost of the entire construction of 1931 which the total area of the borough bore to the total area served by the combined system when the dispute arose, or 331/1768.5 of $123,166.87 = $23,052.43. The borough contended that its liability was limited to a portion of the cost of that section of the 1931 construction by the township which lay within the borough, and that the amount was to be calculated by using the fraction made up of the borough acreage provided with service by that construction and the area served by the combined system outside the part of the borough previously served by the borough's own sewer, or 64/1503 of $31,559.19= $1,343.83. The court below took the position that it was a portion of the cost of the section lying within the borough which the borough was called upon to pay, and that it was only the total area, in all municipalities, finally served by this section, which was the basis for making the calculation. It therefore eliminated from the 1,773 acre total the 267 acres of the borough previously served and the 66 acres of the township lying south of the borough also previously served. The court below filed its decision making findings of fact and conclusions of law, and determined the borough's liability

to the township to be 64/1440 of $31,559.19 = $1,402.64, for which amount judgment was declared with interest at the rate of 4½ per centum per annum, the costs being divided. Exceptions were filed by the township, and after argument before the court in banc were dismissed. On this appeal the township presents thirty assignments of error.

We are of the opinion that the judgment of the court below must be modified as to the amount. The second, third, fifth, eighteenth, twenty-second, twenty-third, twenty-fifth, twenty-ninth, and thirtieth assignments of error will be sustained. The finding of fact which is the subject of the nineteenth and twenty-sixth assignments of error may be conceded to be correct. The finding reads: "That the area of the Borough of Ridley Park tributary to that part of the sewer for which it is bound to pay a proportionate share is 64 acres." But such finding is used by the court below as the basis for a calculation of the borough's liability in conformity with an erroneous interpretation of the agreement of February 14, 1931. It is therefore irrelevant. The other assignments of error with the exception of the twenty-fourth become immaterial in view of our conclusion.

The seventh and eighth paragraphs of the agreement between the borough and the township, when considered together, plainly reveal that the two municipalities were contemplating the combined sewers within the borough limits as a whole, and providing, first, for distribution of future replacement cost of the old, lower section, contributed to the system by the borough, and, second, in that event, for distribution, or proportionate reimbursement of the township by the borough, of the current construction cost of the new, upper section, contributed to the system by the township. The proportion in which each item was to be distributed was the same, so that toward the entire cost of the system after replacement of the old section each would have contributed according

to its area dependent on the system compared with the entire area of all municipalities similarly dependent.

Under this interpretation, there is no difference in meaning between the clause of paragraph seven which reads: "...... the Township of Ridley shall pay unto the said Borough of Ridley Park, that proportion of the total cost of the construction of or replacement of the said sewer that the area of Ridley Township tributary to the sewer bears to the area of the Borough of Ridley Park tributary to the said replaced sewer," and that which reads: "Provided, however, that should areas of other Boroughs, Townships or municipalities be drained by sewers emptying into the sewer or sewers of the Township of Ridley and thus into that of the Borough of Ridley Park, the said areas shall enter into and be added in the computation of proportions, so that the Borough of Ridley Park shall only pay in such proportion as its area bears to the sum total of all the area drained."

The second clause, being a proviso upon the first, refers to areas to be drained by future connection to the completed system; the first clause refers to the area of the borough "tributary" to its own sewer not before but after the construction and connection of the new township sewer. That area was the entire served acreage of the borough, because through the old lower section of the system, made up of the combined sewers, there flowed the sewage not only of the 267 acres originally served, but also of the 64 acres to the north connected with the new upper section. Under the language of the seventh paragraph, therefore, in the replacement of the old section the borough would have been liable for 331/1773 of the cost, and the township 557/1773. Presumably the operation of the Central Delaware County Sewer Authority, participated in by both borough and township, replacing the old borough sewer in 1935, took account of their respective liabilities in

these proportions, otherwise there would be no liability whatever to be asserted in this action, but the borough admits liability to some extent. The sharing of the cost of the township sewer under the eighth paragraph consequently was not to be measured, as the borough and the court below considered, by the acreage of the borough tributary to that new section alone, but by the same method which determined their respective liability for replacement of the old section of sewer under paragraph seven, i. e., 331/1773 for the borough, 557/1773 for the township.

Only a word need be said concerning the township's theory that the borough was obligated under the agreement to pay the township a part of the total cost of all the sewer which had been constructed by the township. We find nothing in the record to support the township's position in this respect. That it was the cost of the section of the township's sewer laid within the borough, which was to be distributed between the borough and the township, was manifestly intended by the agreement. This is the ordinary meaning of the words of the eighth paragraph, "...... the sewer which the township is now about to construct through the said borough ......" The court below was correct in so holding. The contrary view, that the borough, in exchange for acquiring facilities for 64 acres of its own unsewered area, and after having provided not only the township but several other municipalities with an outlet to Darby Creek for four years, should now be required to pay the township 331/1773 of $123,166.87, the cost of a construction three-quarters of which the borough could never possibly use, since it lay upstream and beyond its limits, and which was being built apart from any need of the borough, is neither a reasonable nor a conscionable interpretation of the agreement between the parties. Consequently, it is unnecessary to

discuss a municipality's power to construct and pay for a sewer beyond its municipal limits.

As a matter of fact, on an acreage basis, when the replacement of the old section of the sewer became necessary, the borough was enjoying 331/1773, or about one-fifth the use of this old line, and the township 557/1773, or about one-third of the same. The borough was also using 64/1440 of the sewer constructed by the township, of which the township was using 491/1440, or about one-third. Geography and the force of gravity render the use and return per dollar of construction cost greater for the downstream than for the upstream sections of a sewer, and the borough and township appear to have agreed, quite properly, to divide the cost of the less used and less profitable upstream construction in the same ratio as that of the comparatively more profitable downstream replacement. Distribution of these items in the agreed proportion appears to furnish a complete accounting between the two municipalities.

The court below does not appear to have abused its discretion in its disposition of the costs in that court. See Act of June 18, 1923, P. L. 840, §10, 12 PS §840. The twenty-fourth assignment of error directed thereto is accordingly overruled.

It is our conclusion that the judgment declared and entered by the court below should have been in the principal amount of $5,891.76, which is 331/1773 of $31,-559.19. The record is remitted, with direction that the judgment be so modified. The costs of this appeal are to be paid by the Borough of Ridley Park.